## UNITED STATES DISTRICT COURT
## DISTRICT OF COLUMBIA

| | |
|---|---|
| _____ ) | |
| **TRENISS JEWELL EVANS III** ) | |
| ) | |
| *Plaintiff,* ) | |
| ) | |
| **v.** ) | **Case No. 1:24-cv-377** |
| ) | |
| **WILLIAM L. SHIPLEY** ) | |
| ) | |
| *Defendant.* ) | |
| _____) | |

## <u>DEFENDANT'S MOTION TO DISMISS</u>

Defendant William L. Shipley moves this Court to dismiss the complaint pursuant to Fed. R. Civ. P. 12(b)(6).  As described below, the complaint fails to state a claim on which relief can be granted.

## <u>INTRODUCTION</u>

Plaintiff Evans is a January 6 ("J6") defendant[1] who now solicits funds for the legal defense of other J6 defendants and then uses those funds for his own benefit.  Defendant Shipley is an attorney who defends J6 defendants and once spoke briefly to Evans about his J6 case.  Evans brings this suit seeking damages for breach of fiduciary duty, intentional infliction of emotional distress, and defamation because Shipley has made disparaging comments about him on the internet, opining that Evans is not intelligent and is "grifting off J6 cases."  Under applicable D.C.

---

[1] A defendant in one of the cases arising out of the January 6, 2021 breach of the U.S. Capitol that forced an interruption of the certification of the 2020 Electoral College vote count.

law, Evans' complaint fails to state a claim on which relief can be granted and so must be dismissed.

## FACTUAL BACKGROUND

Plaintiff Evans was charged in this Court with committing criminal offenses at the U.S. Capitol on January 6, 2021, in Case No. 1:21-cr-225 (D.D.C.). On March 10, 2022, Evans pleaded guilty to one count of 18 U.S.C. § 1752(a)(1): Entering and Remaining in a Restricted Building or Grounds. He was sentenced on November 21, 2022 to 36 months of probation, including 20 days of intermittent incarceration, a $5,000 fine, and $500 restitution. The Government's Sentencing Memorandum, filed on May 16, 2022, asserted that "Evans has made statements on social media demonstrating a lack of genuine remorse and has raised money off his participation in the January 6 attack." (Doc. 40 at 2). It cited social media posts he had made:

- "On November 28, 2021, Evans posted a link to his crowd-funding page, stating: 'YES I WAS AT THE CAPITOL JANUARY 6TH. I need your help to continue to speak publicly'" (Id. at 11).
- "On January 3, 2022, Evans again used his participation in the January 6 attack to raise funds ('January 6th Political Speaker and defendant!'), posting a link to his crowd-funding page." (Id. at 13).
- "Evans has repeatedly used his participation in the January 6 attack to promote traffic to his website (www.condemnedusa.com) and increase viewership of his January 6-related media interviews." (Id. at 15). [2]

Defendant Shipley is an attorney who has represented a number of defendants in J6 cases in this Court.[3] Mr. Shipley never entered an appearance as counsel for Evans. Nonetheless, the

---

[2] In adjudicating a motion to dismiss, a court may consider "matters of a general public nature, such as court records," *Baker v. Henderson*, 150 F.Supp.2d 13, 15 (D.D.C. 2001), and documents incorporated by reference or upon which the plaintiff's complaint necessarily relies. *Vasser v. McDonald*, 228 F. Supp. 3d 1, 9 (D.D.C. 2016).

[3] *See, e.g.*, United States v. David Mehaffie, 21 cr 00040 (TNM); United States v. Roberto Minuta, 22 cr 00015 (APM); United States v. Michael Greene, 21 cr 00028 (APM); United States v. Leo Bozell, 21 cr 00216 (JDB); United States v. Chris Worrell, 21 cr 00292 (RCL); United States v. Daniel Phipps, 21 cr 00044 (CJN); United States v. Brian

complaint alleges that in February 2022, Mr. Shipley assisted another attorney, John Pierce (who was Evans' counsel of record), in representing Evans.  (Complaint ¶ 5).  The extent of Mr. Shipley's involvement, as alleged in the complaint, was that Shipley spoke by phone with Evans one time at Pierce's request about a motion Evans wanted to file, with Shipley telling Evans that the statute on which he sought to base the motion was inapplicable to his case.  (*Id.* ¶ 6).

The complaint then jumps ahead in time and focuses on events that occurred one to two years after this consultation, i.e., tweets that Mr. Shipley made on April 9, 2023,  December 19, 2023, January 28, 2024, and February 6, 2024, which relate to Evans' fundraising activities relating to J6 defendants.  The tweets asserted that Evans was "an idiot," "dumb as a lamp post," and was "grifting off J6 cases," and "involved in a grift and fraud" by raising funds for the legal defense of J6 defendants and then using those funds for his own personal expenses.  (Complaint ¶¶ 6-8).  One of the tweets posed the question: "Where are the certified financial statements and tax returns for the grifting organizations run by…. Treniss Evans and the rest?"  (*Id.* ¶ 8).  The complaint asserts claims against Mr. Shipley for breach of fiduciary duty, intentional infliction of emotional distress, and defamation.

## LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the

---

Mock, 21 cr 00444 (JEB); United States v. James McGrew,  21 cr 00398 (BAH); United States v. Jay Kenyon, 23 cr 00101 (ABJ); United States v. Nicholas Von Keudell, 23 cr 00221 (CRC).

court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *In re Interbank Funding Corp. Sec. Litig.*, 629 F.3d 213, 218 (D.C. Cir. 2010) (quoting *Iqbal*, 556 U.S. at 678).

Plausibility is something more than a possibility, and "[t]he complaint must not only allege but also 'show' the Plaintiff is entitled to relief." *Iqbal*, 556 U.S. at 679. Factual allegations that are simply "labels and conclusions, and a formulaic recitation of the elements of a cause of action" are not sufficient. *Twombly*, 550 U.S. at 555. The factual allegations must "be enough to raise a right to relief above the speculative level," *id.* at 555, and must be sufficient to "permit the court to infer more than the mere possibility of misconduct" based upon "its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. For these reasons, courts "need not accept the legal conclusions drawn from the facts [alleged in a complaint], and [they] need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008) (internal quotation marks and citations omitted).

## ARGUMENT

### I.    The Claim For Breach of Fiduciary Duty Fails.

The claim for breach of the fiduciary duties of confidentiality and loyalty fails. Under D.C. law, a breach of a fiduciary duty requires a showing of injury or actual damages. *See Attias v. CareFirst, Inc.*, 365 F.Supp.3d 1, 10 (D.D.C. 2019). "[B]reach of fiduciary duty is not actionable unless injury accrues to the beneficiary or the fiduciary profits thereby." *Randolph v. ING Life Ins. and Annuity Co.*, 973 A.2d 702, 709 (D.C. 2009) (quoting *Beckman v. Farmer*, 579 A.2d 618, 651 (D.C. 1990)). Emotional distress, without accompanying injury, does not suffice. *See*

*Asuncion v. Columbia Hosp. for Women*, 514 A.2d 1187 (D.C. 1986).[4]  Here the only damages sought by the complaint are for mental anguish and other non-pecuniary damages.  (Complaint ¶ 23).  Accordingly, the complaint fails to state a viable cause of action for breach of fiduciary duty.

## II.    The Claim For Intentional Infliction of Emotional Distress Fails.

The claim for intentional infliction of emotional distress also fails.  "An intentional infliction of emotional distress claim must allege (1) extreme and outrageous conduct on the part of the defendant, which (2) intentionally or recklessly (3) causes the plaintiff severe emotional distress.'"  *Johnson v. Paragon Systems, Inc.*, 195 F.Supp.3d 96, 98-99 (D.D.C. 2016) (citation omitted).  "To meet the first element, the conduct must be 'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'"  *Id.* at 99 (quoting *Bernstein v. Fernandez*, 649 A.2d 1064, 1075 (D.C. 1991)). "Establishing the third element requires the plaintiff to show a 'serious, verifiable emotional injury.'"  *Id.* (quoting *Hudson v. D.C.*, 558 F.3d 526, 533 (D.C. Cir. 2009).  Neither of these elements is satisfied here.

The first element is not satisfied because the alleged conduct is not outrageous.  This "very demanding standard" is "only infrequently met." *Dale v. Thomason*, 962 F.Supp. 181, 184 (D.D.C. 1997).   For example, this Court held that "[t]hreatening and embarrassing a retired law enforcement officer in public for non-illegal behavior" was not outrageous.  *Johnson*, 195 F.Supp.3d at 99.  In another case, the Court held that a claim for intentional infliction of emotional

---

[4] A limited exception to this rule permits a plaintiff to recover for negligent infliction of emotional distress without accompanying injury if the plaintiff can show that the defendant has a relationship with the plaintiff, or has undertaken an obligation to the plaintiff, of a nature that necessarily implicates the plaintiff's emotional well-being.  *See Hedgepeth v. Whitman Walker Clinic*, 22 A.3d 789, 810 (D.C. 2011).  However, a typical attorney-client relationship does not qualify because neither the purpose of the relationship nor the fiduciary's undertaking is to care for the plaintiff's emotional well-being; rather the object of the engagement is to achieve a legal objective.  *See id.* at 815.

distress failed because plaintiff's arrest by twelve officers at gunpoint in front of "the very schoolchildren he was assigned to protect" was not "so outrageous in character, and so extreme in degree" to state a claim. *Harris v. D.C.*, 696 F.Supp.2d 123, 137–38 (D.D.C. 2010).  In yet another case, the D.C. Court of Appeals held that allegations that an employer manufactured evidence to establish a claim of sexual harassment against an employee, demoted him, and leaked the information to other employees did not "rise to the level of outrageous conduct" necessary to state a claim for intentional infliction of emotional distress.  *Kerrigan v. Britches of Georgetowne, Inc.*, 705 A.2d 624, 628 (D.C. 1997).  The conduct at issue here – calling plaintiff an "idiot" who made a "stupid argument" about a legal motion he wanted to file and who is "grifting off J6 cases" – pales in comparison to these examples.  "[M]ere insults, indignities, threats, annoyances, petty oppressions, or other trivialities" cannot support a claim.  *Halcomb v. Woods*, 610 F.Supp.2d 77, 80 (D.D.C. 2009) (quoting Restatement (Second) of Torts § 46 cmt. d (1965)).

Neither is the third element satisfied.  "In order to qualify as severe emotional distress, the complaint must describe distress of a nature so acute that 'harmful physical consequences might be not unlikely to result.'"  *Johnson*, 195 F.Supp.3d at 100 (citation omitted).  The complaint in this case fails utterly to describe any acute distress.  It "does not provide any concrete or articulable effects of psychological or physical trauma as a direct cause of Defendant's conduct."  *Id.*

For both of these reasons, the claim for intentional infliction of emotional distress must be dismissed.

## III.    The Claim For Defamation Fails

Finally, the claim for defamation fails.  This claim is based on statements referring to plaintiff as being involved in a "grift" and "fraud."  (Complaint ¶ 16).  The actual statements set forth in the complaint are (1) that plaintiff "is grifting off J6 cases" (*Id.* ¶ 6); (2) that plaintiff was/is

"involved in a grift and fraud" related to raising funds for the defense of persons charged with J6 cases (*Id.* ¶ 8); and (3) "Many have fallen for the stories and lies of a bunch of grifters who see you all as suckers. … Where are the certified financial statements and tax returns for the grifting organizations run by…. Treniss Evans and the rest?" (*Id.*).  These statements are not defamatory.

"Under the First Amendment, liability for defamation arises only if, at a minimum, a defendant's statement 'reasonably implies false and defamatory facts.'"  *Farah v. Esquire Magazine*, 736 F.3d 528, 534 (D.C. Cir. 2013).  This means (1) where a defendant's statement cannot be construed as representations of fact, there can be no defamation; (2) where a statement is so imprecise or subjective that it is not capable of being proved true or false, it is not actionable; and (3) a defendant will not face liability unless the disputed statement is reasonably capable of defamatory meaning.  "These threshold inquiries are questions of law for the court to decide."  *Id.* at 535.  The statements at issue here do not pass this threshold.

First, the term "grifter," while unflattering, is not defamatory.  *See Russo v. Conde Nast Publications*, 806 F. Supp. 603, 609 (E.D. La. 1992).  The term has "many slang meanings," some of which "do <u>not</u> explicitly impute the commission of a crime or even constitute strong insults." *Id.* at 608 (emphasis in the original).

Furthermore, an actionable statement must be false as well as defamatory.  *See Rosen v. American Israel Public Affairs Comm., Inc.*, 41 A.3d 1250, 1256 (D.C. 2012). Statements of opinion are not provably false and thus cannot undergird a claim of defamation.  *See Guilford Transp. Indus., Inc. v. Wilner*, 760 A.2d 580, 597 (D.C. 2000); *McCaskill v. Gallaudet University*, 36 F.Supp.3d 145, 159 (D.D.C. 2014).  For example, statements suggesting the plaintiff engaged in "serious integrity violations," "serious misconduct and other violations," "gross misconduct and integrity violations," and "serious issues of misconduct, integrity violations and unethical

7

behavior" were unverifiable opinions that simply "reflected one person's subjective view of the underlying conduct." *Armstrong v. Thompson*, 80 A.3d 177, 188 (D.C. 2013); *see also Clemmons v. Academy for Educational Development*, 70 F.Supp.3d 282, 308 (D.D.C. 2014) (statement that plaintiff's leadership resulted in "management problems" was unverifiable opinion); *Xereas v. Heiss*, 933 F.Supp.2d 1, 18 (D.D.C. 2013) (statements that plaintiff engaged in "dishonest" and "deceptive" business practices were not provably false); *Rosen*, 41 A.3d at 1258-59 (statements that plaintiff engaged in "conduct unacceptable by any business standard" or was "unfit to be a Scoutmaster and in Scouts" do not contain a provably false factual connotation). Likewise, the statements at issue here "reflect one person's subjective view" of plaintiff's fund raising activities and cannot be the basis for a defamation claim.

Because the statements at issue are neither defamatory nor provably false, the claim for defamation must be dismissed.

## **CONCLUSION**

For the foregoing reasons, the complaint should be dismissed in its entirety pursuant to Rule 12(b)(6). A proposed order is submitted herewith.

Dated: May 15, 2024.                                    Respectfully submitted,

William L. Shipley, Esq.
Pro Se

8

**UNITED STATES DISTRICT COURT**
**DISTRICT OF COLUMBIA**

_____
                                            )
**TRENISS JEWELL EVANS III**                )
                                            )
                *Plaintiff,*  )
                                            )
          **v.**                         )       **Case No. 1:24-cv-377**
                                            )
**WILLIAM L. SHIPLEY**                      )
                                            )
            *Defendant.*  )
_____)


**[PROPOSED] <u>ORDER</u>**

      Upon consideration of defendant's motion to dismiss and the response thereto, it is

hereby

      **ORDERED** that the motion to dismiss is granted and this case is hereby dismissed.


Date: _____                                 _____

                                           James E. Boasberg
                                         United States District Judge