UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| **TRENISS JEWELL EVANS III** | ) | |
| | ) | |
| *Plaintiff*, | ) | |
| | ) | |
| v. | ) | Case No. 1:24-cv-377 |
| | ) | |
| **WILLIAM L. SHIPLEY** | ) | |
| | ) | |
| *Defendant.* | ) | |

### DEFENDANT'S MOTION TO DISMISS

Defendant William L. Shipley moves this Court to dismiss the First Amended Complaint ("FAC") pursuant to Fed. R. Civ. P. 12(b)(6).  Plaintiff filed the FAC in response to Mr. Shipley's motion to dismiss the original Complaint.  While the FAC expands the rendition of the facts and adds a claim for false light invasion of privacy, it fails to cure the legal defects in the original Complaint.  As a result, the FAC still fails to state a claim on which relief can be granted.

### INTRODUCTION

Plaintiff Evans has brought this action in an effort to muzzle Mr. Shipley from publicly criticizing Evans' efforts to profit off the January 6 ("J6") prosecutions in this Court.[1]  Evans, himself, was a J6 defendant and he now solicits funds for the legal defense of other J6 defendants and then uses those funds for his own benefit.  Mr. Shipley is an attorney who defends J6 defendants and once spoke briefly to Evans about his J6 case.  In this action, Evans seeks damages

---

[1] The cases arising out of the January 6, 2021 breach of the U.S. Capitol that forced an interruption of the certification of the 2020 Electoral College vote count.

and injunctive relief for breach of fiduciary duty, intentional infliction of emotional distress, defamation and (now) false light invasion of privacy because Mr. Shipley has made disparaging comments about him on the internet, opining that Evans is not intelligent and is "grifting off J6 cases."  Under applicable D.C. law, the FAC fails to state a claim on which relief can be granted and so must be dismissed.

## FACTUAL BACKGROUND

Evans, himself, was charged with committing criminal offenses at the U.S. Capitol on January 6, 2021, in Case No. 1:21-cr-225 (D.D.C.).  On March 10, 2022, he pleaded guilty to one count of 18 U.S.C. § 1752(a)(1): Entering and Remaining in a Restricted Building or Grounds.  He was sentenced on November 21, 2022 to 36 months of probation, including 20 days of intermittent incarceration, a $5,000 fine, and $500 restitution.  The Government's Sentencing Memorandum, filed on May 16, 2022, asserted that "Evans has made statements on social media demonstrating a lack of genuine remorse and has raised money off his participation in the January 6 attack." (Doc. 40 at 2).  It cited social media posts he had made:

- "On November 28, 2021, Evans posted a link to his crowd-funding page, stating: 'YES I WAS AT THE CAPITOL JANUARY 6TH. I need your help to continue to speak publicly'" (Id. at 11).

- "On January 3, 2022, Evans again used his participation in the January 6 attack to raise funds ('January 6th Political Speaker and defendant!'), posting a link to his crowd-funding page." (*Id.* at 13).

- "Evans has repeatedly used his participation in the January 6 attack to promote traffic to his website (www.condemnedusa.com) and increase viewership of his January 6-related media interviews." (*Id.* at 15). [2]

---

[2] In adjudicating a motion to dismiss, a court may consider "matters of a general public nature, such as court records," *Baker v. Henderson*, 150 F.Supp.2d 13, 15 (D.D.C. 2001), and documents incorporated by reference or upon which the FAC necessarily relies.  *Vasser v. McDonald*, 228 F. Supp. 3d 1, 9 (D.D.C. 2016).

Mr. Shipley is an attorney who has represented a number of defendants in J6 cases in this Court.[3]  Mr. Shipley never entered an appearance as counsel for Evans.  Nonetheless, the FAC alleges that in February 2022, Mr. Shipley assisted another attorney, John Pierce (who was Evans' counsel of record), in  representing Evans.  (FAC ¶ 5).  The extent of Mr. Shipley's involvement, as alleged in the FAC, was that Shipley once talked to Evans at Pierce's request about an "extradition" motion Evans wanted to file, and advised Evans that the statute on which he sought to base the motion was inapplicable to his case.  (*Id.* ¶ 6).

The FAC then jumps ahead in time and focuses on events that occurred one to two years after this consultation, i.e., tweets that Mr. Shipley made on April 9, 2023,  December 19, 2023, January 28, 2024, and February 6, 2024, which relate to Evans' fundraising activities relating to J6 defendants.  The tweets asserted that Evans was "an idiot," "dumb as a lamp post," and was "grifting off J6 cases," and "involved in a grift and fraud" by raising funds for the legal defense of J6 defendants and then using those funds for his own personal expenses.  (FAC ¶¶ 6-8).

The FAC highlights two tweets.  The first, made on November 1, 2023, stated "That fraud [Evans] blocked me. LOL. I guess calling out his grifting was taking too much of a chunk out of his income stream. Please do not donate to him. He is a stream of non-stop inaccurate information and uses the donations to avoid getting a real job."  (FAC ¶ 19).  The second tweet, made on February 6, 2024, stated ""Treniss Evans is a lying sack of sheet grifter who is dumb as a lamp post." (*Id.* ¶ 20).  On that same date, Mr. Shipley posed the question: "Where are the certified

---

[3] *See, e.g.*, United States v. David Mehaffie,  21 cr 00040 (TNM); United States v. Roberto Minuta, 22 cr 00015 (APM); United States v. Michael Greene,  21 cr 00028 (APM); United States v. Leo Bozell, 21 cr 00216 (JDB); United States v. Chris Worrell, 21 cr 00292 (RCL); United States v. Daniel Phipps, 21 cr 00044 (CJN); United States v. Brian Mock, 21 cr 00444 (JEB); United States v. James McGrew,  21 cr 00398 (BAH); United States v. Jay Kenyon, 23 cr 00101 (ABJ); United States v. Nicholas Von Keudell, 23 cr 00221 (CRC).

financial statements and tax returns for the grifting organizations run by…. Treniss Evans and the rest?" (*Id.* ¶ 8).

The FAC asserts claims against Mr. Shipley for breach of fiduciary duty, intentional infliction of emotional distress, defamation, and false light invasion of privacy.

## LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *In re Interbank Funding Corp. Sec. Litig.*, 629 F.3d 213, 218 (D.C. Cir. 2010) (quoting *Iqbal*, 556 U.S. at 678).

Plausibility is something more than a possibility, and "[t]he complaint must not only allege but also 'show' the Plaintiff is entitled to relief." *Iqbal*, 556 U.S. at 679. Factual allegations that are simply "labels and conclusions, and a formulaic recitation of the elements of a cause of action" are not sufficient. *Twombly*, 550 U.S. at 555. The factual allegations must "be enough to raise a right to relief above the speculative level," *id.* at 555, and must be sufficient to "permit the court to infer more than the mere possibility of misconduct" based upon "its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. For these reasons, courts "need not accept the legal conclusions drawn from the facts [alleged in a complaint], and [they] need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008) (internal quotation marks and citations omitted).

**ARGUMENT**

**I.    The Claim For Breach of Fiduciary Duty Fails.**

The claim for breach of the fiduciary duties of confidentiality and loyalty fails. Under D.C. law, a breach of a fiduciary duty requires a showing of injury or actual damages. *See Attias v. CareFirst, Inc.*, 365 F.Supp.3d 1, 10 (D.D.C. 2019). "[B]reach of fiduciary duty is not actionable unless injury accrues to the beneficiary or the fiduciary profits thereby." *Randolph v. ING Life Ins. and Annuity Co.*, 973 A.2d 702, 709 (D.C. 2009) (quoting *Beckman v. Farmer*, 579 A.2d 618, 651 (D.C. 1990)). Emotional distress, without accompanying injury, does not suffice. *See Asuncion v. Columbia Hosp. for Women*, 514 A.2d 1187 (D.C. 1986).[4] Here the only damages alleged by the FAC are for mental anguish and other non-pecuniary damages. (FAC ¶ 28). Accordingly, the FAC fails to state a viable cause of action for breach of fiduciary duty.

Nor does the request for injunctive relief enjoining Mr. Shipley from disclosing confidential communications make this claim viable. "A plaintiff who establishes a defendant's liability in tort, or who establishes that the defendant is likely to act … in a way that would make defendant liable in tort, is entitled to a remedy or remedies that prevent or compensate for the harm that the tort has caused or threatens to cause." *Restatement (Third) of Torts: Remedies A TD No 2* § 43 (2023). Here, the allegations in the FAC fail to establish Mr. Shipley's liability in tort or to show that he is likely to act in a way that would make him liable in tort. Thus, there is no basis for injunctive relief.

---

[4] A limited exception to this rule permits a plaintiff to recover for negligent infliction of emotional distress without accompanying injury if the plaintiff can show that the defendant has a relationship with the plaintiff, or has undertaken an obligation to the plaintiff, of a nature that necessarily implicates the plaintiff's emotional well-being. *See Hedgepeth v. Whitman Walker Clinic*, 22 A.3d 789, 810 (D.C. 2011). However, a typical attorney-client relationship does not qualify because neither the purpose of the relationship nor the fiduciary's undertaking is to care for the plaintiff's emotional well-being; rather the object of the engagement is to achieve a legal objective. *See id.* at 815.

Further, "[t]he court should deny a permanent injunction if there is no sufficient threat of tortiously caused harm that the injunction could prevent or repair." *Restatement (Third) of Torts: Remedies A TD No 2* § 43(b). Here, the alleged disclosure of confidential information has already occurred and cannot be remedied by injunctive relief. *See Leatt Corp. v. Innovative Safety Technology LLC*, 2010 WL 1526382, at *10 (S.D. Cal. 2010) ("The grant of an injunction at this late stage cannot 'unring the bell,' so to speak."). And the FAC does not allege facts which establish that additional disclosures of client confidences are likely to occur or that they would be actionable if they did occur.

## II.   The Claim For Intentional Infliction of Emotional Distress Fails.

The claim for intentional infliction of emotional distress also fails. "An intentional infliction of emotional distress claim must allege (1) extreme and outrageous conduct on the part of the defendant, which (2) intentionally or recklessly (3) causes the plaintiff severe emotional distress.'" *Johnson v. Paragon Systems, Inc.*, 195 F.Supp.3d 96, 98-99 (D.D.C. 2016) (citation omitted). "To meet the first element, the conduct must be 'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'" *Id.* at 99 (quoting *Bernstein v. Fernandez*, 649 A.2d 1064, 1075 (D.C. 1991)). "Establishing the third element requires the plaintiff to show a 'serious, verifiable emotional injury.'" *Id.* (quoting *Hudson v. D.C.*, 558 F.3d 526, 533 (D.C. Cir. 2009). Neither of these elements is satisfied here.

The first element is not satisfied because the alleged conduct is not outrageous. This "very demanding standard" is "only infrequently met." *Dale v. Thomason*, 962 F.Supp. 181, 184 (D.D.C. 1997). For example, this Court held that "[t]hreatening and embarrassing a retired law enforcement officer in public for non-illegal behavior" was not outrageous. *Johnson*, 195

6

F.Supp.3d at 99.  In another case, the Court held that a claim for intentional infliction of emotional distress failed because plaintiff's arrest by twelve officers at gunpoint in front of "the very schoolchildren he was assigned to protect" was not "so outrageous in character, and so extreme in degree" to state a claim. *Harris v. D.C.*, 696 F.Supp.2d 123, 137–38 (D.D.C. 2010).  In yet another case, the D.C. Court of Appeals held that allegations that an employer manufactured evidence to establish a claim of sexual harassment against an employee, demoted him, and leaked the information to other employees did not "rise to the level of outrageous conduct" necessary to state a claim for intentional infliction of emotional distress. *Kerrigan v. Britches of Georgetowne, Inc.*, 705 A.2d 624, 628 (D.C. 1997).  The conduct at issue here – calling plaintiff an "idiot" who kept making a "stupid argument" about a legal motion he wanted to file and who is "grifting off J6 cases" – pales in comparison to these examples.  "[M]ere insults, indignities, threats, annoyances, petty oppressions, or other trivialities" cannot support a claim. *Halcomb v. Woods*, 610 F.Supp.2d 77, 80 (D.D.C. 2009) (quoting Restatement (Second) of Torts § 46 cmt. d (1965)).

Neither is the third element satisfied.  "In order to qualify as severe emotional distress, the complaint must describe distress of a nature so acute that 'harmful physical consequences might be not unlikely to result.'"  *Johnson*, 195 F.Supp.3d at 100 (citation omitted).  The FAC fails utterly to describe any acute distress.  It "does not provide any concrete or articulable effects of psychological or physical trauma as a direct cause of Defendant's conduct." *Id.*

For both of these reasons, the claim for intentional infliction of emotional distress must be dismissed.

**III.   The Claims For Defamation And False Light Invasion of Privacy Fail**

The claims for defamation and false light invasion of privacy fail as well.  "[A] plaintiff may not avoid the strictures of the burdens of proof associated with defamation by resorting to a

claim of false light invasion." *Armstrong v. Thompson*, 80 A.3d 177, 188 (D.C. 2013) (quoting *Moldea v. New York Times Co.*, 22 F.3d 310, 319 (D.C. Cir. 1994)).  Here both claims are based on statements referring to plaintiff as "grifting" individuals and being involved in a "grift" and "fraud."  (FAC ¶¶ 17-18).  The actual statements set forth in the FAC are (1) that plaintiff "is grifting off J6 cases" (*Id.* ¶ 6); (2) that plaintiff was/is "involved in a grift and fraud" related to raising funds for the defense of persons charged with J6 cases (*Id.* ¶ 8); (3) "Many have fallen for the stories and lies of a bunch of grifters who see you all as suckers. … Where are the certified financial statements and tax returns for the grifting organizations run by…. Treniss Evans and the rest?" (*Id.*); and (4) "That fraud [Evans] blocked me. LOL. I guess calling out his grifting was taking too much of a chunk out of his income stream. Please do not donate to him. He is a stream of non-stop inaccurate information and uses the donations to avoid getting a real job." (*Id.* ¶ 19).  These statements are not defamatory, nor does the FAC allege that they were made with the requisite malice.

"Under the First Amendment, liability for defamation arises only if, at a minimum, a defendant's statement 'reasonably implies false and defamatory facts.'" *Farah v. Esquire Magazine*, 736 F.3d 528, 534 (D.C. Cir. 2013).  This means (1) where a defendant's statement cannot be construed as representations of fact, there can be no defamation; (2) where a statement is so imprecise or subjective that it is not capable of being proved true or false, it is not actionable; and (3) a defendant will not face liability unless the disputed statement is reasonably capable of defamatory meaning.  "These threshold inquiries are questions of law for the court to decide." *Id.* at 535.  The statements at issue here do not pass this threshold.

The term "grifter," while unflattering, is not defamatory. *See Russo v. Conde Nast Publications*, 806 F. Supp. 603, 609 (E.D. La. 1992).  While the FAC cites a dictionary definition

of "grift" in support of its claims (¶ 9 n.1), the term has "many slang meanings," some of which "do not explicitly impute the commission of a crime or even constitute strong insults." *Russo*, 806 F. Supp. at 608 (emphasis in the original). Likewise, the term "fraud" is not defamatory because it does not have a precise and readily apparent meaning. The term "fraud" has a broad scope; it may mean that something is criminally deceptive, but it may also mean simply that it is not what it purports to be. Further, "'fraud' is a term often used as hyperbole, trotted out in even the most inconsequential context." *Doctor's Data, Inc. v. Barrett*, 170 F.Supp.3d 1087, 1123 (N.D. Ill. 2016); *see also Nicosia v. De Rooy*, 72 F.Supp.2d 1093 (N.D. Cal. 1999) (in context, defendant's assertions on her web-site that plaintiff was a "fraud," "criminal," and had acted illegally were mere hyperbole, and thus were not defamatory).

In addition, an actionable statement must be false as well as defamatory. *See Rosen v. American Israel Public Affairs Comm., Inc.*, 41 A.3d 1250, 1256 (D.C. 2012). Statements of opinion are not provably false and thus cannot undergird a claim of defamation. *See Guilford Transp. Indus., Inc. v. Wilner*, 760 A.2d 580, 597 (D.C. 2000); *McCaskill v. Gallaudet University*, 36 F.Supp.3d 145, 159 (D.D.C. 2014). For example, statements suggesting the plaintiff engaged in "serious integrity violations," "serious misconduct and other violations," "gross misconduct and integrity violations," and "serious issues of misconduct, integrity violations and unethical behavior" were unverifiable opinions that simply "reflected one person's subjective view of the underlying conduct." *Armstrong v. Thompson*, 80 A.3d at 188; *see also Clemmons v. Academy for Educational Development*, 70 F.Supp.3d 282, 308 (D.D.C. 2014) (statement that plaintiff's leadership resulted in "management problems" was unverifiable opinion); *Xereas v. Heiss*, 933 F.Supp.2d 1, 18 (D.D.C. 2013) (statements that plaintiff engaged in "dishonest" and "deceptive" business practices were not provably false); *Rosen*, 41 A.3d at 1258-59 (statements that plaintiff

9

engaged in "conduct unacceptable by any business standard" or was "unfit to be a Scoutmaster and in Scouts" do not contain a provably false factual connotation); *Doctor's Data*, 170 F.Supp.3d at 1123 (statement that test was a "fraud" was not verifiable). All of the statements at issue here "reflect one person's subjective view" of plaintiff's fund raising activities, *Armstrong v. Thompson*, 80 A.3d at 188, and so cannot be the basis for a defamation claim.

Because the statements at issue are neither defamatory nor provably false, the claims for defamation and false light invasion of privacy must be dismissed.

Yet another reason why these claims must be dismissed is that the FAC fails to allege actual malice on the part of Mr. Shipley. Plaintiff is a public figure for purposes of defamation law. He has made a career out of his involvement in the events of January 6, speaking publicly about the subject, conducting media interviews, and engaging in fund-raising. He has "assumed the risk of publicity and had access to channels of communication to defend [himself]." *Lohrenz v. Donnelly*, 350 F.3d 1272, 1279 (D.C. Cir. 2003). Accordingly, to make out a claim of defamation, he must plausibly allege that Mr. Shipley published the alleged defamatory falsehood with "actual malice." *Liberty Lobby, Inc. v. Dow Jones & Co.*, 838 F.2d 1287, 1292 (D.C. Cir. 1988). Likewise, "a false light claim requires proof of actual malice when the plaintiff is a public figure." *Arpaio v. Cottle*, 404 F.Supp.3d 80, 86 (D.D.C. 2019). Actual malice requires proof that the defamatory falsehood at issue was made "with 'knowledge that it was false or with reckless disregard of whether it was false or not.' " *Liberty Lobby*, 838 F.2d at 1292 (quoting *New York Times v. Sullivan*, 376 U.S. 254, 280 (1964)). "Stated another way, Plaintiff must plead facts that would render plausible that [Mr. Shipley] 'in fact entertained serious doubts as to the truth of [his] publication.'" *Arpaio*, 404 F.Supp.3d at 84.

The FAC "comes nowhere close to pleading sufficient facts that plausibly establish 'actual

malice.'" *Arpaio*, 404 F.Supp.3d at 84. Its "bald assertions that [Mr. Shipley] knew that [his] statements were false are no more than 'labels and conclusions' referencing the relevant legal standard." *Nunes v. WP Company, LLC*, 2021 WL 3550896, at *5 (D.D.C, 2021). More specifically, the FAC quotes a February 9, 2024 tweet by Mr. Shipley which states "I have been sued by Treniss Evans. I love the rules of discovery. Buckle up buttercup." (FAC ¶ 22). The FAC asserts that this tweet "reveals that SHIPLEY wants to use the discovery process … to determine if his defamatory statements and offensive comments are in fact true." (*Id.* ¶ 23). Alternatively, it alleges this tweet shows that "[a]t a minimum, SHIPLEY has serious doubts about his claims of illicit conduct by EVANS …." (*Id.*). But this Court "owe[s] no allegiance to [such] 'unwarranted inferences, unreasonable conclusions, or arguments' " *Katyle v. Penn Nat. Gaming, Inc.*, 637 F.3d 462, 466 (4th Cir. 2011). By any fair reading, Mr. Shipley's tweet contradicts the inferences that the FAC purports to draw from it. Far from demonstrating that Mr. Shipley had serious doubts about his criticisms of plaintiff, the tweet instead evinces Mr. Shipley's confidence that discovery will vindicate his view that plaintiff is a fraud who is grifting off the J6 cases. In sum, the FAC fails to plead facts that plausibly establish actual malice on Mr. Shipley's part.

## CONCLUSION

For the foregoing reasons, the FAC should be dismissed in its entirety pursuant to Rule 12(b)(6). A proposed order is submitted herewith.

Dated: June 9, 2024.                                       Respectfully submitted,


                                                           William L. Shipley, Esq.
                                                           Pro Se

**UNITED STATES DISTRICT COURT**
**DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| **TRENISS JEWELL EVANS III** ) | |
| ) | |
| *Plaintiff*, ) | |
| ) | |
| v. ) | Case No. 1:24-cv-377 |
| ) | |
| **WILLIAM L. SHIPLEY** ) | |
| ) | |
| *Defendant.* ) | |

**[PROPOSED] ORDER**

Upon consideration of defendant's motion to dismiss and the response thereto, it is hereby

**ORDERED** that the motion to dismiss is granted and this case is hereby dismissed.

Date: _____                          _____

                                                                                James E. Boasberg
                                                                                United States District Judge