## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **TRENISS JEWELL EVANS III** | § | |
| | § | |
| **v.** | § | |
| | § | |
| | § | **CASE NO. 1:24-cv-00377-JEB** |
| | § | |
| | § | |
| **WILLIAM L. SHIPLEY** | § | |
| | § | |
| | § | |
| | § | |

## RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

TO THE HONORABLE JUDGE OF SAID COURT:

Plaintiff TRENISS JEWELL EVANS III ("EVANS" or "Plaintiff") files this Response in Opposition to Defendant's Motion to Dismiss his Complaint and in support he states as follows:

1.      "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is *plausible* on its face.' *Wultz v. Islamic Republic of Iran*, 755 F.Supp.2d 1, 39 (D.D.C. 2010) (quoting *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). *Twombly's* facial plausibility standard is satisfied when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

2.      "The standard requires "more than a sheer possibility that a defendant has acted unlawfully" but "is not akin to a 'probability requirement.'" *VoteVets Action Fund v. United States Department of Veterans Affairs*, 992 F.3d 1097, 1104 (D.D.C 2021) (emphasis added) (quoting *Twombly*, 550 U.S. at 556, 127 S.Ct. 1955). "[A] complaint survives a motion to dismiss even '[i]f there are two alternative explanations, one advanced by [the] defendant and the

other advanced by [the] plaintiff, both of which are plausible.'" *Id.* (quoting *Banneker Ventures, LLC v. Graham*, 798 F.3d 1119, 1129 (D.C. Cir. 2015) (quoting *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011)). Here, the complaint sufficiently alleges more than plausible causes of action for breach of the duty of confidentiality and loyalty, the intentional infliction of emotional distress, and defamation/false light invasion of privacy.

## EVANS HAS PROPERLY ALLEGED A CLAIM FOR BREACH OF DUTY OF CONFIDENTIALITY AND LOYALTY

3.      The Defendant has asserted that EVANS'S claim for breach of confidentiality and loyalty can somehow be dismissed because he failed to allege damages. This assertion is being made despite the clear allegations in the complaint regarding the embarrassment EVANS has suffered, the loss of contributors to his legal defense fund, the public ridicule he is endured, the imputation that EVANS committed theft, the annoyance he has suffered, and the explicit allegations that the Defendant has committed his breaches for his own personal financial benefit. *See, Doc. No. 8 ¶¶ 9, 26, 28, and 30*. Similar allegations of damages in a case such as this that center on violations of professional conduct have been upheld. *See*, *Paul v. Judicial Watch Inc.*, 543 F. Supp. 2d. 1, 7 (D.D.C. 2008). In *Paul*, Senior Judge Royce Lamberth determined that allegations that the Plaintiff "suffered economic loss, physical and emotional distress and damages, and injuries and losses to his claims, reputation and good will" were sufficient to withstand a motion to dismiss. *Id*. Here, EVANS has gone further than the plaintiff in *Paul* by specifically alleging that the Defendant took advantage of the attorney-client relationship and made illegal disclosures of confidential conversations for his own personal financial benefit. *See Doc. No. 1 ¶ 9 and 21*.

4.      The case law cited by the Defendant is largely inapposite to the instant cause of action because it deals only with common law fiduciary claims but even that case law authorizes a common law breach of fiduciary claim when the fiduciary profits from the alleged breach.

2

*Randolph v. ING Life Ins. Annuity Co.*, 973 A.2d 702, 709 (D.C. 2009) ("Breach of fiduciary duty is not actionable unless injury accrues to the beneficiary **or the fiduciary profits thereby"**) (emphasis added and quoting *Beckman v. Farmer*, 579 A.2d. 618, 651 (D.C. 1990); *See also, Headfirst Baseball, LLC v. Elwood*, 239 F.Supp 3d. 7, 14 (D.D.C. 2017). Accordingly, the Defendant's motion fails based on a plain reading of the complaint that alleged damages incurred by EVANS as well as financial gain sought by the Defendant.

5.      The Defendant's motion also fails because of the distinction between the common law fiduciary claims cited by the Defendant such as: *Attias v. CareFirst, Inc*., 365 F.Supp.3d 1, 10 (D.D.C. 2019)[1]; *Randolph v. ING Life Ins. Annuity Co.*, 973 A.2d 702, 709 (D.C. 2009); and *Asuncion v. Columbia Hosp. for Women*, 514 A.2d 1187 (D.C. 1986), and the case law regarding a lawyer's breach of his/her standard of conduct. Here, it is alleged in the complaint, and the Defendant has admitted in his Motion to Dismiss that he engaged in the representation of EVANS. The Defendant admits to *briefly* speaking to EVANS but on his twitter account that is referenced in the complaint the Defendant first published that he spent "**45 minutes**" talking to EVANS and he described EVANS as "**idiotic**" and he further described the confidential conversation as akin to "**trying to explain the law to a 1st grader**." *See Doc. No. 1 ¶ 6.* In a subsequent tweet, the Defendant published that "**Evans would not let go of the stupid ideas given to him by Quang (a paralegal)**," regarding the application of statute to EVANS'S indictment, and the Defendant added that he "**wasted about 3 hours**" "**trying to talk sense into**

---

[1] This citation is to *Attias I*. That case has a long history including the revival of claims dismissed in the cited case based on a lack of damages. See, *Attias v. CareFirst, Inc*., 2024 WL 1344401, page 4 "Upon Plaintiffs' motion for reconsideration, however, the Court revived those claims as to all Plaintiffs. See *Attias III*, 518 F. Supp. 3d at 51–57. With respect to the breach of contract claim, the Court observed that, though there is some D.C. Court of Appeals authority suggesting that actual damages are required for a prima facie contract claim, other authority, which had not been provided to the Court previously, holds that " '[e]ven where monetary damages cannot be proved' the prevailing party may be entitled to nominal damages, specific performance, or declaratory relief." *Id.* at 52 (quoting *Wright v. Howard University*, 60 A.3d 749, 753 & n.3 (D.C. 2013)).

**him** (i.e. EVANS)." *See Doc. No. 1 ¶ 7*. These claims are not speculative. These claims reference specific publications of confidential conversations regarding EVANS'S defense of an indictment that constitute the kind of breach of fiduciary duty that led this very Court to deny a similar motion to dismiss in *Guo Wengui v. Clark Hill, PLC*, 440 F. Supp. 3d, 30, 37-38 (D.D.C. 2020).

6.      In *Guo Wengui*, the Court considered claims of legal practice and breach of ethical duty by a plaintiff who alleged that his lawyer had misrepresented his firm's ability to safeguard confidential information in order to secure him as a client. *Id*. at 38. This Court indicated that the "elements of a legal malpractice claim are similar to, but slightly distinct from, those for breach of fiduciary duty." *Guo Wengui*, 440 F. Supp. at 38. The Court identified the elements as (1) an attorney-client relationship existed, (2) the attorney breached a duty and (3) damages resulted from said breach. *Id*. at 38. The Court held that the plaintiff had sufficiently alleged damages because the plaintiff's confidential information was taken from the lawyer's office as the result of a cyber-attack and then published by the hacker and the publication of that information constituted a cognizable injury to the plaintiff. *Guo Wengui*, 440 F. Supp. at 38. In so doing, the Court recognized that "Lawyers are professionals, and as such they have a greater obligations." *Id*. (citing *Zauderer v. Office of Disciplinary Counsel*, 417 U.S. 626, 676 (1985).

7.      Here, EVANS has alleged, and the Defendant's twitter account confirms, that the Defendant intentionally published confidential information in violation of the Defendant's fiduciary duty to keep client confidences. The instant cause of action is a more severe breach of duty than that found by this Court in *Guo Wengui* because here the Defendant acted intentionally and compounded his disclosure of confidential conversations with insults and defamatory statements against EVANS such as referring to him as a "grifter" just two days before the filing

of this complaint and after having been asked in writing to cease and desist from insulting EVANS and from disclosing confidential information regarding his representation of EVANS.

8.      Like this Court, the District of Columbia Court of Appeals has also acknowledged the distinction between a claim that a lawyer's breach of fiduciary duty violated a standard of conduct with claims based on lawyer's negligence in his standard of care. *Bolton v. Crowley, Hoge & Fein, P.C.*, 110 A. 3d 575, 583-584 (D.C. 2015) ("The law recognizes a clear distinction between the allegations of legal malpractice based on negligence (sometimes called a breach of standard of care) and those based on breach of fiduciary duty (sometimes called breach of the standard of conduct) (citations omitted). In *Bolton*, the Court specifically distinguished between claims for a breach of the standard of care by an attorney that can only be maintained when the plaintiff's interests in a case were adversely impacted with claims against an attorney for breach of his fiduciary duty whereas here cause injury separate from the merits of the underlying case. *Id. at 583*.

9.      In *Bolton*, the Court reversed the granting of a motion for summary judgment on a claim for breach of fiduciary duty because it was unclear whether the Court properly considered whether the claim was for a breach of care (i.e. malpractice) or a breach of attorney conduct such as is alleged here. *Bolton*, 110 A.3d at 584-585. The *Bolton* court echoed this Court's sentiments in *Guo Wengui* when it stated that the "relation between attorney and client is a fiduciary relation of the very highest character and binds the attorney to the most conscientious fidelity…" *Id*. at 584. (citations omitted). The *Bolton* court added that a lawyer's obligation to "refrain from misuse of client's confidences" predates the American Bar Association Canons of Professional Ethics promulgated in 1908." *Bolton*, 110 A.3d at 584. The wrong that the *Bolton* court wanted the lower court to consider was the same wrong that must be considered here and that is the

wrong committed by the Defendant when he disclosed confidential communications that he had with EVANS thereby placing his interests over those of EVANS.

10.     That wrong is embodied in Rule 1.06 of the District of Columbia Rules of Professional Conduct that is referenced in the complaint, and that states as follows:

"a) Except when permitted under paragraph (c), (d), or (e), a lawyer shall not knowingly:

(1) reveal a confidence or secret of the lawyer's client;

(2) use a confidence or secret of the lawyer's client to the disadvantage of the client;

(3) use a confidence or secret of the lawyer's client for the advantage of the lawyer or of a third person.  (b) "Confidence" refers to information protected by the attorney-client privilege under applicable law, and "secret" refers to other information gained in the professional relationship that the client has requested be held inviolate, or **the disclosure of which would be embarrassing, or would be likely to be detrimental, to the client**."

*D.C. R. Pro. Conduct 1.6 (a) and (b)* (emphasis added).

The rule expressly prohibits the disclosure of confidential information such as the confidences that were disclosed herein and that violation is actionable because it was embarrassing and detrimental to EVANS as alleged in the complaint.

11.     Moreover, the District of Columbia Court of Appeals has interpreted Rule 1.06 to clearly state that the "lawyer's ethical duty to preserve a client's confidences and secrets is broader than the attorney-client privilege." *Adams v. Franklin*, 924 A.2d 993, 997 (D.C. 2007). The Defendant has not alleged that he did not participate in the defense of EVANS'S indictment, but should he subsequently make such an allegation he cannot escape the application of comment (9) to Rule 1.6 that states that "**the duty of confidentiality imposed by this rule attaches when the lawyer agrees to consider whether a client-lawyer relationship shall be established**." Similarly, Rule

1.6 of the Rules of Professional Conduct in Hawaii, the rule that governs the Defendant's

practice in that state, prohibits the release of confidential information "not only to matters

communicated in confidence by the client but also to all information relating to the

representation, **whatever its source**." *Hawaii R. Pro. Conduct Rule 1.6 comment (3)* (emphasis

added).

12.     Based on the allegations in the complaint, and the blatant and unapologetic breaches of

fiduciary duty committed by the Defendant, this Court must deny the motion to dismiss and

allow EVANS'S claims to proceed to trial because EVANS has sufficiently alleged that the

Defendant breached his standard of conduct as an attorney and that the Defendant did so for his

own personal gain and he also caused EVANS damages. For this Court to do otherwise, would

destroy the foundation of trust and confidence upon which the attorney-client relationship is

based and it would also require this Court to ignore the very duties that it has acknowledged

regarding the "duty of loyalty in this context" that has been described "as one of 'uberrima fides,'

which means, most abundant good faith, requiring absolute and perfect candor, openness and

honesty, and the absence of any concealment or deception." *Guo Wengui*, 440 F. Supp. at 36.

(quoting *Herbin v. Hoeffel*, 806 A.2d 186, 197 (D.C. 2002).

13.     Contrary to the vague reference in the motion to dismiss regarding EVANS'S claim for

injunctive relief, EVANS is not somehow using his request for injunctive relief to buttress or

validate his cause of action for breach of the standard of care. The Defendant cites no real

authority for his assertion that EVANS is using the request for injunctive relief to validate his

claim for breach of standard of care. The Restatement of Torts § 43 cited by the Defendant does

not in anyway suggest that EVANS cannot be granted a permanent injunction under these facts

nor does the California District Court case wherein an injunction was actually granted. *See, Leatt*

*Corp. v. Innovative Safety Technology LLC*, 2010 WL 1526382, at *9 (S.D. Cal. 2010) (The court granted a motion for preliminary injunction to prevent the Defendant from using or disclosing the Plaintiff's trade secrets and from manufacturing or selling the Plaintiff's product).

14.     First, unlike most defendants in the usual commercial context, here, the Defendant is an attorney who is under both a common law and professional duty to refrain from disclosing confidential information as discussed herein and universally understood by all lawyers and judges. Secondly, the Restatement of Torts § 43 cited by the Defendant expressly authorizes courts to "grant a permanent injunction to provide a partial remedy for the tort and award compensatory damages under the rules in §§ 2-377 for any harm that the tort causes and that the injunction does not prevent or repair." *Restatement (Third) of Torts: § 43(a)(3)*. Further, Comment g. to § 43 of the Restatement of Torts states that "Courts permanently enjoin torts far more often than not in those cases in which a threatened or continuing tort is proved and an injunction is feasible. "Harm now, pay later" has not been an appealing principle. It is generally better to prevent the tort, and to prevent the harm that the tort would cause, than to let the harm happen and award compensation that is inevitably imperfect, often just a crude estimate, and often delayed." *Restatement (Third) of Torts: § 43. Comment g.*

15.     Courts have granted injunctions in less compelling circumstances when the plaintiff established that future injuries would occur if future defamatory statements were not enjoined. *See LaRue v. Johnson*, 2018 WL 1967128 at *9 (D.D.C. February 22, 2018)(citing *Pittsburgh Press Company v. Pittsburgh Commission on Human Relations*, 413 U.S. 376, 390 (1973)("finding that due to the defendants' 'frequent and continuing defamatory statements, an injunction is necessary to prevent future injury to [the plaintiff's] personal reputation and business relations" and limiting the injunction to " statements which have been found in this and

prior proceedings to be false and libelous."); and *Safex Foundation, Inc. v. Safeth, Ltd.*, 531 F.

Supp. 285, 315 (D.D.C. 2021) (the Court granted a preliminary injunction to enjoin the

defendants from continuing to make claims that the plaintiffs were infringing on defendants'

trademarks.). Here, we do not know exactly what other confidential information or defamatory

statements that the Defendant will disclose regarding EVANS, but EVANS is certain that he

wants the Defendant to be enjoined from disclosing any such information in the future. Based on

his behavior thus far, it has become quite apparent that the Defendant will not fulfill the duties

that are imposed upon him and all attorneys without a court order compelling him to do so. For

that reason, upon a trial on the merits, EVANS will be entitled to an injunction to prevent the

Defendant from continuing to disclose both confidential information and defamatory statements.

## EVANS HAS PROPERLY ALLEGED A CLAIM INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

16.     As was the case with the claim regarding the breach of fiduciary duty, the Defendant has

cited inapposite cases regarding his assertion that his conduct is not "outrageous" and that the

allegations do not constitute "severe emotional distress." The cases are inapplicable because

none of the cases cited by the Defendant concern claims that involve the attorney-client

relationship.[2] The Defendant is an accomplished attorney so his failure to cite appropriate case

law was likely not inadvertent. It does not require a great deal of research for the Defendant to

know that the District of Columbia Court of Appeals has "observed that disclosure of client

---

[2]   *Johnson v. Paragon Systems, Inc.* 195 F. Supp3d 96 (D.D.C. 2016) (law enforcement contractor sued security firm for allegedly wrongfully detaining him); *Dale v. Thomason*, 962 F. Supp. 181 (D.D.C. 1997) (Members of White House Travel Office sued owners of aviation company for false allegations of wrongdoing); *Harris v. D.C.*, 696 Supp 2d 123 (D.D.C. 2010) (A commissioned Special Police Officer of the District of Columbia sued D.D. Metropolitan Police Officers over an arrest that was based on information that the officer was in the wrong location and not authorized to carry a firearm). *Kerrigan v. Britches of Georgetowne, Inc.*, 705 A.2d 624 (D.C. 1997) (employee sued employer for discrimination, sexual harassment, and intentional infliction of emotional distress); and *Halcomb v. Woods*, 610 F.Supp 2d 77 (D.D.C. 2009) (plaintiff sued Washington Metropolitan Transit Authority Officer for allegedly falsely arresting her for not paying her fare).

confidences is "contrary to the fundamental principle that the attorney owes a fiduciary duty to [his] client and must serve the client's interest with the utmost loyalty and devotion." *Herbin v. Hoeffel*, 806 A.2d 186, 197 (D.C. 2002). (citing *In Re Gonzalez*, 773 A.2d 1026, 1031(D.C. 2001).

17.     As stated herein above, that "duty has been described as one of "uberrima fides, which means, most abundant good faith, requiring absolute and perfect candor, openness and honesty, and the absence of any concealment or deception." *Id.* (citing *Perez v. Kirk & Carrigan*, 822 S.W.2d 261, 265 (Tex.App.1991. When "applied to the duty of confidentiality, the obligation extends "not only to privileged 'confidences,' but also to unprivileged secrets; it 'exists without regard to the nature or source of the information or the fact that others share the knowledge." *Herbin*, 806 A.2d at 197 (citing *In re Gonzalez*, 773 A.2d at 1031 (quoting *Perillo v. Johnson*, 205 F.3d 775, 800 n. 9 (5th Cir.2000)). Much of the foregoing case law is cited in the instant complaint and should have put the Defendant on notice that the cause of action was appropriately alleged.

18.     In *Herbin*, the court determined that the allegations against the Defendant attorney regarding his disclosure of confidential information, if true, constituted a violation of an ethical rule that caused embarrassment to the client, and it held that the allegations were sufficient "to constitute extremely serious misconduct on the part of an attorney." *Herbin*, 806 A.2d at 197. Specifically, the *Herbin* court stated that in "light of the high value we place on a lawyer's duty of loyalty and to preserve client confidences, we are unwilling to state that the conduct alleged here, if true, is not "extreme and outrageous" as a matter of law…" *Id.*

19.     Further, contrary to the suggestion in the Defendant's motion, "under District of Columbia law, actual physical injury is **not** necessary to establish the elements of intentional

infliction of emotional distress. *Bodoff v. Islamic Republic of Iran*, 424 F. Supp 2d 74, 85-86

(D.C. 2006) (citing *Howard Univ. v. Best*, 484 A.2d 958, 985 (D.C.1984) (citing Waldon v.

Covington, 415 A.2d 1070, 1076 (D.C.1980) (noting that "an action for intentional infliction may

be made out even in the absence of physical injury or impact")). Consequently, based on the

extreme and outrageous disclosure of both specific attorney-client conversations and the

additional defamatory statements wherein the Defendant called EVANS "idiotic," "a 1st grader,"

"dumb as a post," "a lying sack of sheet," a "fraud," and a "grifter," EVANS has sufficiently

alleged the tort of Intentional Infliction of Emotional Distress.

## EVANS HAS PROPERLY ALLEGED A CLAIM FOR DEFAMATION AND FALSE LIGHT INVASION OF PRIVACY

20.     Finally, the Defendant has moved this Court to dismiss EVANS'S claim for defamation.

EVANS amended his complaint to clarify the claims for defamation and to add a claim for false

light invasion of privacy. As was the case with the claims for fiduciary duty and intentional

infliction of emotional distress, the Defendant has cited inapplicable case law. First, this case is

not governed by 32-year-old Louisiana case law that requires some alleged "explicit" imputation

of a crime. *See, Russo v. Conde Nast Publications*, 806 F. Supp. 603, 609 (E.D. La. 1992).

Secondly, the facts alleged herein involve much more than a mere "opinion" or some

"imprecise" statements that are incapable of being deemed defamatory. *See Farah v. Esquire*

*Magazine*, 736 F.3d 528, 534 (D.C. Cir. 2013); and *Guilford v. Transportation Industries, Inc.*,

760 A.2d 580, 597 (D.C. 2000).

21.     This case is governed by District of Columbia law and when a D.C. "court is confronted

with a motion to dismiss [a defamation claim], a court must evaluate '[w]hether a statement is

capable of defamatory meaning,'" which is a threshold "question of law[,]" *Zimmerman v. Al*

*Jazeera America, LLC*, 246 F. Supp 3d 257, 273 (D.D.C. 2017) (citations omitted). "[T]he

defamatory meaning inquiry focuses only on whether a reasonable reader could understand a statement as tending to injure a plaintiff's reputation." *Id.* When, as in this case, "a statement is reasonably capable of a defamatory meaning, the trier of fact must determine if it was actually understood by the recipient in that sense." *Zimmerman*, 246 F. Supp 3d at 273. (citations omitted). "Ultimately, then, "[i]t is only when the court can say that the publication is not reasonably capable of any defamatory meaning and cannot be reasonably understood in any defamatory sense that it can rule as a matter of law, that it was not libelous. *Id*.

22.     Similarly, and as alleged in the complaint, a false light invasion of privacy claim "requires a showing of: (1) publicity; (2) about a false statement, representation or imputation; (3) understood to be of and concerning the plaintiff; and (4) which places the plaintiff in a false light that would be offensive to a reasonable person." *Doe v. Bernabei & Wachtel, PLLC*, 116 A.3d 1262, 1267 (D.C. 2015) (citations omitted). False light invasion of privacy is a separate tort from defamation but "the two torts share similar elements and are often "analyzed in the same manner [,]" at least "where the plaintiff rests both his defamation and false light claims on the same allegations[.]" *Zimmerman v. Al Jazeera America, LLC*, 246 F. Supp 3d 257, 273 (D.D.C. 2017) (citations omitted). Here, EVANS is alleging that the same outrageous statements made by SHIPLEY constitute both defamation and a false light invasion of privacy cause of action.

23.     Contrary to the assertions in the Defendant's motion, the Defendant has not merely offered opinions.[3] He has made direct statements that are easily discernable as defamatory. For example, on November 1, 2023, the Defendant tweeted as follows: I was wondering why I have not seen any posts from @CondemnedUSA Treniss Evans lately. That **fraud** blocked me. LOL.

---

[3]  The Defendant has made direct and unequivocal comments but even the case law cited in his motion makes it "clear that there is no wholesale exemption from liability in defamation for statements of "opinion." Instead, statements of opinion can be actionable if they imply a provably false fact or rely upon stated facts that are provably false." *Moldea v. New York Times Co.*, 22 F.3d 310, 313 (D.C. Cir. 1994)(citation omitted).

(emphasis added). **I guess calling out his grifting was taking too much of a chunk out of his income stream. Please do not donate to him. He is a stream of non-stop inaccurate information and uses the donations to avoid getting a real job**." *See, Doc. 8, ¶19* (emphasis added). This tweet has received 4,384 views and counting. That tweet is defamatory in and of itself because it directly states that EVANS was illicitly earning income by providing inaccurate information to avoid obtaining legitimate employment. Such false allegations of theft by way of lies injures EVANS'S profession and lowers his standing in his community. That injury is exacerbated given the fact that the Defendant represented EVANS.

24.     Also, as recently as February 6, 2024, the Defendant tweeted as follows: "**Treniss Evans is a lying sack of sheet grifter who is dumb as a lamp post**. (emphasis added). He [Treniss Evans] was still trying to get me to represent him in early 2022 but I wasn't doing any misdemeanor cases at that time. He got PO'd because I told him the legal theories he wanted to pursue were **idiotic**. (emphasis added). He was working at the time with idiot paralegal Huang Quan or whatever his name is. **Dumb and Dumber**." *See, Doc. 8, ¶ 20* (emphasis added). This tweet has been viewed by 9,014 people and counting. The Defendant once again stated unequivocally that EVANS is a grifter and he added a demeaning expletive to describe EVANS. These statements are not questions or statements of opinion but direct and false statements that, at a minimum, make EVANS appear to be odious, infamous and/or ridiculous. The fact that the Defendant has by his own admission "briefly" represented EVANS and his comments are tied to his representation only exacerbates the impact that his defamatory remarks have on EVANS.

25.     Finally, on February 9, 2024, SHIPLEY made the following bizarre and somewhat threatening tweet as follows: "**I have been sued by Treniss Evans. I love the rules of discovery. Buckle up buttercup**." *See, Doc. 8, ¶ 22.* This tweet has an astounding 29,600 views

and counting. SHIPLEY'S February 9, 2024, tweet is significant because it supports the undeniable fact that SHIPLEY has no evidence that EVANS is an *idiot* and a *fraud* who is *grifting* and earning income from his *grifting* by providing *non-stop inaccurate information* that allows him to *avoid getting a real job*.

26.     SHIPLEY'S February 9, 2024, tweet reveals that SHIPLEY wants to use the discovery process for which he has proclaimed his "love" to determine if his defamatory statements and offensive comments are in fact true. If SHIPLEY had any evidence to support his claim that EVANS has and does obtain money illicitly, he would not need to conduct any discovery. He would have published the supporting evidence in the same contemptible manner in which he has published his many defamatory and offensive statements. At a minimum, SHIPLEY has serious doubts about his claims of illicit conduct by EVANS, but he has no hesitation to proclaim his empty allegations as true.

27.     In an effort to avoid liability for his outrageous conduct, the Defendant has made an empty assertion that EVANS is somehow a public figure such that he must allege and prove actual malice. The facts alleged in the complaint do not reveal that EVANS is a public figure, and the Defendant cannot create his own defense by his decision to publicly disclose confidential discussions and then proclaim that EVANS is a public figure.[4] *Salem Media Group, Inc. v. Awan*, 301 A.3d 633, 652 (D.C. 2023); See also, *Hutchinson v. Proxmire*, 443 U.S. 111, 135 (1979) ("Clearly, those charged with defamation cannot, by their own conduct, create their own defense by making the claimant a public figure."). The facts alleged in the complaint do not

---

[4] "At the motion to dismiss stage, courts generally may not consider materials outside the pleadings, but they can consider documents attached as exhibits or incorporated by reference in the complaint." *Electronic Privacy Information Center v. Internal Revenue Service*, 575 F.Supp.3d 84, 88 (D.D.C. 2021). Therefore, the Court should not find that EVANS is a public figure of any type. In the event the Court does make such a finding, EVANS request leave to amend his complaint.

reveal that EVANS is a public figure because the defamatory remarks alleged in the complaint do not concern a public controversy.

28.     "To determine whether Plaintiff is a private or limited-purpose public figure, the court makes three inquiries. "First, the court must identify the relevant controversy and determine whether it is a public controversy. Second, the plaintiff must have played a significant role in that controversy. Third, the defamatory statement must be germane to the plaintiff's participation in the controversy." 2024 WL 670475 *1 (D.D.C. January 10, 2024)(citing " *Kahl v. Bureau of National Affairs, Inc*., 856 F.3d 106, 114 (D.C. Cir. 2017) (quoting *Jankovic v. Int'l Crisis Grp*., 822 F.3d 576, 585 (D.C. Cir. 2016)) (internal quotation marks omitted).

29.     As this Court is fully aware, the Supreme Court "requires public officials and public figures bringing defamation claims to meet a high burden of proof to prevail" because of its desire to "encourage and facilitate debate over matters of public concern." *Kahl*, 856 F.3d at 113. (citing *New York Times Co. v. Sullivan*, 376 U.S. 254, 269 (1964); and *Harte-Hanks Communications, Inc. v. Connaughton*, 491 U.S. 657, 666, (1989). Here, those policy considerations do not apply because all of the causes of action alleged in the complaint center on the publication of confidential communications between the Defendant and EVANS that concern his *brief* representation of EVANS and that shockingly include childish defamatory statements and insults all of which violate his duties as an attorney. See, *Herbin v. Hoeffel,* 806 A. 2d. 186, 197 (D.C. 2002) ("disclosure of confidences is contrary to the fundamental principle that the attorney owes a fiduciary duty to his/her client and that the attorney must serve the client's interest with the utmost loyalty and devotion.") (citing I*n Re Gonzalez*, 773 A.2d 1026, 1031(D.C. 2001). Accordingly, as a matter of well settled principles of law, the Defendant's disclosure of attorney-client communications coupled with insults are <u>not</u> matters of public

interest that can somehow transform EVANS into a public figure. On the contrary, such communications are not to be disclosed to any person much less published on social media as was the case here.

30.     If somehow the Court looks beyond the pleadings and determines that EVANS is a public figure, the complaint alleges more than sufficient facts to infer malice.[5] To show malice, EVANS needs only to allege and demonstrate that the Defendant "either actually knew that a published statement was false, or recklessly disregarded whether it might be false." *Kahl*, 856 F.3d at 113. (citing *New York Times Co. v. Sullivan*, 376 U.S. at 280). Here, the complaint is replete with references to the fact that the Defendant published false statements "intentionally and emphatically," with "serious doubts about his claims," "with gross fraud and/or evil motive or intent," and in "bad faith." *See*, *Doc. No. 8 ¶¶ 17, 23, 30, and 32.* Further, the fact that the Defendant made his defamatory remarks in the context of his prior representation of EVANS adds a degree of malice that is usually lacking in cases involving public figures with whom the Defendant has no fiduciary relationship.

31.     Finally, and most importantly, the allegations of the Defendant's bad motivation are probative of his willingness to make and publish his defamatory comments because the Defendant is motivated to enrich himself at the expense of EVANS. Generally, a bad motive is not in and of itself suggestive of actual malice. *Jankovic v. International Crisis Group*, 822 F.3d 576, 590 (D.C. Cir. 2016) (citing *Tavoulareas v. Piro*, 817 F.2d 762, 795 (D.C. Cir. 1987). However, such bad motive is relevant to a determination of actual malice when, as is the case

---

[5]  A plaintiff like Evans is not required to plead the words "actual malice." See, *Deripaska v. Associated Press*, 282 F.Supp.3d 133 (D.C. 2017) ("Certainly, a plaintiff may not need to invoke the magic words "actual malice," (citing *Parsi v. Daioleslam*, 778 F.3d 116, 131 (D.C. Cir. 2015); "but the complaint must "adequately allege[ ] facts that support an inference that Defendant[ ] published the defamatory statements ... with actual malice." (citing *Zimmerman v. Al Jazeera Am., LLC*, 246 F.Supp.3d 257, 280 (D.D.C. 2017).

here, the bad motive reveals a 'willingness to publish unsupported allegations.'" *Jankovic*, 822

F.3d at 590-591 (citing *Tavoulareas*, 817 F.2d at 796.

32.     The complaint is replete with explanations of the relevance of the Defendant's motivation

to publish defamatory statements as follows: "SHIPLEY'S desire to divert funds from EVANS

to himself may be what is motivating SHIPLEY to make such derogatory and defamatory

comments that relate to J6 cases like the J6 case for which he represented EVANS in February

2022"; "SHIPLEY was/is motivated by his desire to enrich himself at EVAN'S expense by

diverting individuals who may wish to EVANS'S J6 legal defense fund to his personal defense

fund. SHIPLEY'S comments constitute extreme and outrageous conduct that has subjected

EVANS to embarrassment and public ridicule, damaged his personal reputation, and caused him

to lose potential contributors to his legal defense fund"; "*Please do not donate to him. He is a*

*stream of non-stop inaccurate information and uses the donations to avoid getting a real job*"

(implying that donations should be made instead to the Defendant); and "SHIPLEY has taken

advantage of the attorney-client relationship he had with EVANS for his own personal gain.

SHIPLEY will not suffer any hardship by simply refraining from making defamatory remarks

and violating the fiduciary duties that he is obliged to adhere to as a licensed attorney." *See*, *Doc.*

*No. 8 ¶¶ 9, 13, 19, and 26*. EVANS is not alleging, nor does he believe that he is a public figure

but whether such is the case or not it is undeniable that the facts alleged strongly infer actual

malice on the part of the Defendant that satisfies any pleading requirement in a defamation case

brought by a public figure.

33.     Based on the clarification of the claim for defamation and false light invasion of privacy

in the live pleading filed at Doc. No. 8, the Court should deny the motion to dismiss the claims

for defamation and false light invasion of privacy because the complaint alleges that the

Defendant has, at a minimum, published statements that a reasonable reader could understand are statements that tend to injure EVANS'S reputation.

Respectfully Submitted,

THE CORTEZ LAW FIRM
1202 South Alamo Street
San Antonio, Texas 78210
Telephone No.:  (210) 273-2277
Facsimile  No.:  (210) 504-1523
adam@cortezlawfirm.com

By:      **/s/ Adam C. Cortez**
ADAM C. CORTEZ
D.C. Bar No.: TX0191

ATTORNEYS FOR PLAINTIFF

## CERTIFICATE OF SERVICE

I certify that I have, on this 12th day of June 2024, delivered a true and correct copy of the foregoing document to the Defendant via the ECF system and/or electronic mail.

**/s/ Adam C. Cortez**
ADAM C. CORTEZ